```
                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                       TAMPA DIVISION
```

ADRIAN WILCOX,

       Plaintiff,
v.                                 Case No.:   8:10-cv-2383-T-33MAP

TACO BELL OF AMERICA, INC., and
YUM! BRANDS, INC.,

       Defendants.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendants' Motion to Dismiss, or Stay and Compel Arbitration (Doc. # 11), filed on March 2, 2011. Plaintiff filed his response to the Motion (Doc. # 14) on March 15, 2011. For the reasons that follow, the Court grants the Motion to the extent that Plaintiff's claims shall be submitted to arbitration and the case stayed pursuant to 9 U.S.C. § 3.

**I.   Background and Procedural History**

Plaintiff Adrian Wilcox filed suit in this Court on October 22, 2010, alleging that Defendants Taco Bell and YUM! Brands ("Defendants" or "Taco Bell") engaged in discriminatory employment practices in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Florida Civil Rights Act, Fla. Stat. § 760.10 et seq. Wilcox filed an Amended Complaint on February 2, 2011,

asserting class allegations. (Doc. # 3). Pursuant to Local Rule 4.04(b), a motion for class certification was due on or before May 2, 2011. On May 6, 2011, Defendants filed a Motion to Strike Class Action Allegations of Plaintiff's Amended Complaint (Doc. # 24), alleging that Wilcox had not timely filed a motion for class certification or a motion for extension of time in which to do so. The Court granted that motion on August 8, 2011. (Doc. # 30).

Wilcox alleges that Taco Bell subjected its African-American or Black employees to discrimination based upon color and race through less-favorable conditions of employment, including scheduling, management decisions, evaluations, discipline, promotion opportunities, pay, application of company policies, and demeaning and racially hostile attitudes and comments. (Doc. # 3 at ¶¶ 12-13). Wilcox further asserts that Taco Bell threatened his employment if he did not cut his hair, which is prohibited under his bona fide Rastafarian religious beliefs. (Id. at ¶ 14). Wilcox voiced opposition to what he viewed as religious discrimination by complaining to management and reporting the alleged discriminatory acts to the Equal Employment Opportunity Commission (EEOC). (Id. at ¶ 15). Wilcox alleges that Taco Bell terminated his employment in retaliation for voicing his opposition. (Id. at ¶ 16).

2

Wilcox states that he has performed all conditions precedent to the maintenance of this action, or such conditions precedent have been waived, including timely filing a charge of discrimination with the EEOC and Florida Commission on Human Relations, receiving a right to sue notice and timely filing the present suit. (Id. at ¶ 11).

Defendants filed their Motion to Dismiss, or Stay and Compel Arbitration (Doc. # 11), on March 2, 2011, alleging that Wilcox's employment relationship with Taco Bell is governed by a written agreement in which he agreed to arbitrate any controversy arising out of his employment. (Doc. # 11 at 1). Defendants assert that Wilcox's claims fall within the scope of the arbitration provision, yet he failed to arbitrate the dispute before filing this action. (Id.). Defendants ask this Court to dismiss the complaint for lack of jurisdiction or, in the alternative, to compel arbitration and stay the proceedings. (Id. at 7).

Wilcox filed his response to the Motion (Doc. # 14) on March 15, 2011. Wilcox asserts that Defendants' motion to dismiss should be denied because it is not limited to the pleadings or facts alleged in the complaint, but instead focuses on the arbitration agreement. (Doc. # 14 at 3). Wilcox

3

further argues that arbitration is inappropriate in light of the class allegations in his Amended Complaint. (Id. at 4).

On February 9, 2011, Defendants filed a demand for arbitration with the American Arbitration Association (AAA). The AAA has stayed the arbitration proceedings for at least sixty days pending resolution of the instant Motion. (Id. at 3).

## II. Legal Standard

The Federal Arbitration Act (FAA) provides that a written arbitration agreement "is valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 of the FAA provides that a district court must compel arbitration and stay the underlying action if the parties had an earlier agreement to arbitrate their dispute. 9 U.S.C. § 3.

The Supreme Court has held that the FAA represents a "liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). "Absent some violation of public policy, a federal court must refer to arbitration any controversies covered by the provisions of an arbitration clause." Telecom Italia, SPA v. Wholesale Telecom Corp., 248 F.3d 1109, 1114 (11th Cir. 2001). "However, the policy fostered by the FAA

4

'does not require parties to arbitrate when they have not agreed to do so.'" Wheat, First Sec., Inc. v. Green, 993 F.2d 814, 817 (11th Cir. 1993) (quoting Volt Info. Sciences, Inc. v. Bd. of Trustees of Stanford Univ., 489 U.S. 468, 478 (1989)).

"Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." AT&T Technologies, Inc. v. Comm. Workers of Am., 475 U.S. 643, 649 (1986). When asked to compel arbitration of a dispute, the court's first task "is to determine whether the parties agreed to arbitrate that dispute." Chastain v. Robinson-Humphrey Co., Inc., 957 F.2d 851, 854 (11th Cir. 1992) (internal quotations and citation omitted)).

That question is generally decided based upon principles governing contract interpretation. Telecom Italia, 248 F.3d at 1114. "The plain language of the contract is the best evidence of the parties' intent, which generally governs a contract's construction and interpretation." Viamonte v. Biohealth Technologies, Inc., No. 09-21522-CIV, 2009 WL 4250578 (S.D. Fla. Nov. 25, 2009). However, "those intentions are generously construed as to the issues of arbitrability," with all doubts resolved in favor of arbitration. Olsher Metals Corp. v.

5

Olsher, No. 01-3212-CIV, 2003 WL 25600635, at *3 (S.D. Fla. 2003) (internal quotations and citations omitted).

### III. **Analysis**

The written arbitration agreement between the parties in this employment discrimination case states as follows:

> Agreement to Arbitrate. Because of the delay and expense of the court systems, TACO BELL and I agree to use confidential binding arbitration, instead of going to court, for any claims that arise between me and Taco Bell, its related companies, and/or their current or former employees. Without limitation, such claims would include any concerning compensation, employment (including, but not limited to, any claims concerning sexual harassment or discrimination) or termination of employment. Before arbitration, I agree: (i) first to present any such claims in full written detail to TACO BELL; (ii) next, to complete any TACO BELL internal review process; and (iii) finally, to complete any external administrative remedy (such as with the Equal Employment Opportunity Commission). In any arbitration, the then prevailing employment dispute resolution rules of the American Arbitration Association will apply, except that TACO BELL will pay the arbitrator's fees, and TACO BELL will pay that portion fo the arbitration filing fee in excess of the similar court filing fee had I gone to court.

(Doc. # 14 at 2-3). Defendants argue that Wilcox entered into this arbitration agreement on August 22, 2007. (Id. at 2). Wilcox states that the agreement appears to be part of an application for employment he allegedly executed in conjunction with his transfer to a different Taco Bell location. (Id.). Defendants assert that the agreement was a

6

condition of Wilcox's continued employment (Doc. # 11 at 3), which Wilcox does not appear to dispute.

Defendants argue that the arbitration agreement is valid and enforceable, and expressly encompasses Wilcox's discrimination claims. (Id. at 5). Wilcox does not appear to dispute that argument with respect to his individual claims. Absent any arguments concerning the validity of the arbitration agreement (such as unconscionability, lack of mutual assent or waiver), this Court is inclined to grant Defendants' request to compel arbitration of Wilcox's claims.

However, Wilcox makes other arguments in his response to the Motion. He challenges Defendants' motion to dismiss because it is not limited to the pleadings or facts alleged in the complaint. (Doc. # 14 at 30). Wilcox also argues that arbitration is inappropriate in light of the class allegations in his Amended Complaint. (Id. at 4). The Court will address these arguments.

### A.   Motion to Dismiss

Wilcox argues that Defendants' motion to dismiss should be denied because it is not limited to the pleadings or facts alleged in the complaint. Defendants argue this Court may look beyond the pleadings because Defendants dispute the Court's subject matter jurisdiction in this case.

7

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must confine its analysis to the four corners of the complaint. If the Court considers other matters it must convert the motion to dismiss into one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), in contrast, "a court is free to consider matters beyond the four corners of the complaint." <u>Seminole Tribe of Fla. v. Coryi, Inc.</u>, No. 96-6368-CIV, 1996 U.S. Dist. Lexis 21368, at *3 (S.D. Fla. June 27, 1996).

Although Defendants assert that this court lacks subject matter jurisdiction over this dispute, they move to dismiss pursuant to Rule 12(b)(6) and the FAA. The Court will assume that the citation to Rule 12(b)(6) was a scrivner's error, and instead focus on the FAA.

Section 3 of the FAA compels district courts to stay proceedings involving arbitrable claims:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been

8

>had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Notwithstanding the plain language of the statute, courts in the Eleventh Circuit have on occasion dismissed arbitrable claims. See Viamonte, 2009 WL 4250578, at *5 (discussing such cases). However, the Eleventh Circuit has instructed that "[u]pon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration." Bender v. A.G. Edwards & Sons, Inc., 971 F.2d 698, 699 (11th Cir. 1992). In light of this directive, the Court finds that this action should be stayed pending arbitration and not dismissed.[1] Insofar as Defendants cite cases in which the Eleventh Circuit has upheld district court decisions dismissing arbitrable claims, this Court declines to exercise any discretion it may have to grant the Motion to Dismiss.

### B. Class Allegations

Wilcox also argues that arbitration is inappropriate in light of the class allegations in his Amended Complaint. Because the arbitration agreement at issue in this matter is

---

[1] While this Court dismissed arbitrable claims in Arcidiacono v. The Limo, Inc., No. 8:10-cv-780-T-33AEP, 2010 WL 4511083 (M.D. Fla. Nov. 2, 2010), the plaintiffs there agreed to dismissal of the action.

silent as to class arbitration, Wilcox contends that he did not waive his right to have his class-action claims considered by this Court. (Doc. # 14 at 6). In support of this argument, he relies upon the Supreme Court's recent decision in Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 130 S. Ct. 1758 (2010).

In Stolt-Nielsen, the Supreme Court was asked to decide "whether imposing class arbitration on parties whose arbitration clauses are 'silent' on that issue is consistent with" the FAA. Id. at 1764. The Supreme Court held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." Id. at 1775. Furthermore, an implicit agreement authorizing class arbitration may not be inferred solely from the existence of an arbitration agreement. Id. "This is so because class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator." Id.

In their reply brief, Defendants argue that Wilcox "misconstrues" Stolt-Nielsen, and instead point to Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359 (11th Cir. 2005). (Doc. # 17 at 3). In Caley, the Eleventh Circuit held that an

10

arbitration agreement was enforceable even though it precluded class arbitrations. The Court finds Caley to be inapposite to this case because the arbitration agreement at issue here does not preclude class actions but rather is silent as to class claims.

In light of Stolt-Nielsen, the Court finds Wilcox's argument against class arbitration persuasive. Nonetheless, this Court granted Defendants' motion to strike Wilcox's class allegations for failure to timely file a motion for class certification. (Doc. # 30). Whatever the merits of Wilcox's argument, it is moot at this juncture.

**IV. Conclusion**

The Court finds that Wilcox's individual claims are subject to arbitration, and Wilcox's class allegations are no longer at issue. The Court therefore finds that the parties are bound by the terms of the arbitration agreement in this case. The Court is not inclined to dismiss this case as requested by Defendants, however. Instead, the Court finds it appropriate to compel the parties to submit to arbitration and to stay this action pending the completion of the arbitration proceedings consistent with the terms of 9 U.S.C. § 3.

Accordingly, it is now

**ORDERED, ADJUDGED, and DECREED:**

11

(1) Defendants' Motion to Dismiss, or Stay and Compel Arbitration (Doc. # 11) is **GRANTED** to the extent that Plaintiff's claims shall be submitted to arbitration and the case shall be stayed pursuant to 9 U.S.C. § 3.

(2) Defendant's request that this case be dismissed is **DENIED**.

(3) The case is hereby **STAYED** pending notification by the parties that they have completed the arbitration process and the stay is due to be lifted or the case is due to be dismissed.

(4) The parties shall file a joint status report with this Court every ninety days until this matter is resolved.

(5) The Clerk shall terminate all deadlines and motions, and stay and administratively close the case.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 15th day of August 2011.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel and Parties of Record

12